**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

_____

GIRL SCOUTS OF MANITOU COUNCIL, INC.,

        Plaintiff,
v.                                                                                               Case No. 08-CV-184

GIRL SCOUTS OF THE UNITED STATES OF AMERICA, INC.,
KATHY CLONINGER, PATRICIA DIAZ DENNIS, and
LINDA FOREMAN,

        Defendants.

_____

# ORDER

On May 12, 2008, the plaintiff, Girl Scouts of Manitou Council, Inc., ("Manitou Council") filed its amended complaint in this action, alleging that the defendants, Girl Scouts of the United States of America, Inc. and individual members of its management (collectively referred to as "GSUSA"), intend to redistribute the plaintiff's territory in a national realignment plan designed to reduce the number of councils which are used to distribute the Girl Scout program. Manitou Council's amended complaint raises eleven causes of action including breach of contract, tortious interference, economic coercion, and violations of the Wisconsin Fair Dealership Law. Manitou Council has also moved for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. Manitou Council seeks an order enjoining GSUSA from going forward with the realignment plan. For the reasons stated below, Manitou Council's motion for a preliminary injunction will be denied.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original; citations omitted). Granting a preliminary injunction involves the "exercise of a very far-reaching power" and is "never to be indulged in except in a case clearly demanding it." *Roland Mach. Co. v. Dresser Indus. Inc.*, 749 F.2d 380, 389 (7th Cir. 1984) (citations omitted).

To prevail on its motion for preliminary injunctive relief, the plaintiff must first prove that: (1) it has some likelihood of succeeding on the merits; and (2) it has no adequate remedy at law and will suffer irreparable harm if the preliminary relief is denied. *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). "If the moving party cannot establish either of these prerequisites, a court's inquiry is over and the injunction must be denied." *Id.* If the moving party clears both thresholds, then the court must consider whether the irreparable harm the moving party will suffer if the injunction is not granted is greater than the irreparable harm the non-moving party will suffer if the injunction is granted, and the public interest, meaning the consequences to non-parties of granting or denying the injunction. *Id.* at 11-12. The moving party bears the burden of persuasion with respect to each of these factors. *Fox Valley Harvestore, Inc. v. A. O. Smith Harvestore Products, Inc.*, 545 F.2d 1096, 1097 (7th Cir. 1976).

Manitou Council must show that it will suffer irreparable harm if the court denies its motion to preliminarily enjoin GSUSA from going forward with its

realignment plan. An injury is irreparable harm for purposes of granting a preliminary injunction only if the harm cannot be repaired by a final judgment after trial. *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997) (citations omitted). Manitou Council notes that, under the Wisconsin Fair Dealership Law, any violation of the Wisconsin Fair Dealership Law is deemed to be an irreparable harm. *See* Wis. Stat. § 135.065 ("In any action brought by a dealer against a grantor under this chapter, any violation of this chapter by the grantor is deemed an irreparable injury to the dealer for determining if a temporary injunction should be issued.") Manitou Council argues that the threatened realignment would cause Manitou Council to cease operating as a Girl Scout council thereby driving Manitou Council out of business and causing irreparable injury.

In response to Manitou Council's motion, GSUSA argues that the Wisconsin Fair Dealership Law does not apply to Manitou Council's charter agreement with GSUSA, and that even if it did, Manitou Council failed to show a likelihood of success in proving a violation of the Wisconsin Fair Dealership Law. GSUSA also contends that Manitou Council has an adequate remedy at law and that it will not be irreparably harmed if an injunction is not issued. GSUSA asserts that the alleged potential harm to Manitou Council is not irreparable because even if the realignment takes place, Manitou Council's: "(a) corporate structure would not be affected; (b) assets would not be transferred; (c) employees would not be fired; and (d) ability to provide Girl Scouting will not be affected." (Wright March 21, 2008 Decl. ¶ 73.) In

addition, GSUSA notes that if the realignment occurs, it can later be realigned to the existing format if Manitou Council prevails at trial.

Manitou Council does not discuss in its reply brief the alleged irreparable harm it would suffer in the absence of a preliminary injunction. Rather, Manitou Council argues that the Wisconsin Fair Dealership Law applies to this case, and, as a result, irreparable harm is statutorily presumed. *See* Wis. Stat. § 135.065. In support of this position, Manitou Council cites to *Builder's World, Inc. v. Marvin Lumber & Cedar, Inc.*, 482 F. Supp. 2d 1065 (E.D. Wis. 2007). In *Builder's World*, the district court determined that a non-profit cooperative ("co-op") qualified as a "dealer" under the Wisconsin Fair Dealership Law, because "a co-op is a corporation or other entity within § 135.02(6) and subject to the [Wisconsin Fair Dealership Law]." *Id.* at 1073. However, the corporate structure of the co-op in *Builder's World* substantially differs from the structure of GSUSA and the Manitou Council. For example, the co-op in *Builder's World* distributed its profits to the co-op members in the form of patronage dividends, *id.* at 1069-70, and, here, "GSUSA may not distribute its profit to its membership or officers . . . . " (Pl.'s Reply Br. 3; Schemenauer Decl. Ex. N at 10.) In addition, authority cited by GSUSA suggests that the Wisconsin Fair Dealership Law does not apply to Manitou Council's charter agreement with GSUSA. For example, the Wisconsin Supreme Court has refused to adopt an "expansive interpretation of the definitions of 'dealership' . . . . " *Kania v. Airborne Freight Corp.*, 300 N.W.2d 63, 75 (Wis. 1981); *see also Moore v. Tandy Corp., Radio Shack Div.*, 631 F. Supp. 1037, 1045 (W.D. Wis. 1986) ("[T]he definition of a dealership is not

-4-

Case 2:08-cv-00184-JPS   Filed 06/05/08   Page 4 of 10   Document 58

addition, GSUSA notes that if the realignment occurs, it can later be realigned to the existing format if Manitou Council prevails at trial.

Manitou Council does not discuss in its reply brief the alleged irreparable harm it would suffer in the absence of a preliminary injunction. Rather, Manitou Council argues that the Wisconsin Fair Dealership Law applies to this case, and, as a result, irreparable harm is statutorily presumed. *See* Wis. Stat. § 135.065. In support of this position, Manitou Council cites to *Builder's World, Inc. v. Marvin Lumber & Cedar, Inc.*, 482 F. Supp. 2d 1065 (E.D. Wis. 2007). In *Builder's World*, the district court determined that a non-profit cooperative ("co-op") qualified as a "dealer" under the Wisconsin Fair Dealership Law, because "a co-op is a corporation or other entity within § 135.02(6) and subject to the [Wisconsin Fair Dealership Law]." *Id.* at 1073. However, the corporate structure of the co-op in *Builder's World* substantially differs from the structure of GSUSA and the Manitou Council. For example, the co-op in *Builder's World* distributed its profits to the co-op members in the form of patronage dividends, *id.* at 1069-70, and, here, "GSUSA may not distribute its profit to its membership or officers . . . . " (Pl.'s Reply Br. 3; Schemenauer Decl. Ex. N at 10.) In addition, authority cited by GSUSA suggests that the Wisconsin Fair Dealership Law does not apply to Manitou Council's charter agreement with GSUSA. For example, the Wisconsin Supreme Court has refused to adopt an "expansive interpretation of the definitions of 'dealership' . . . . " *Kania v. Airborne Freight Corp.*, 300 N.W.2d 63, 75 (Wis. 1981); *see also Moore v. Tandy Corp., Radio Shack Div.*, 631 F. Supp. 1037, 1045 (W.D. Wis. 1986) ("[T]he definition of a dealership is not

to be construed expansively."), *aff'd*, 819 F.2d 820 (7th Cir. 1987). In light of the foregoing, it appears that applying the Wisconsin Fair Dealership Law to Manitou Council's charter agreement with GSUSA may improperly expand the "common sense application of Ch. 135 [Wisconsin Fair Dealership Law ]." *Kania*, 300 N.W.2d at 75.

More importantly, however, the realignment Manitou Council opposes would only take place after its position and comments have been reviewed by GSUSA's chief executive officer and board of directors, and, depending on the outcome of that review process, the realignment may not even occur. (Wright March 21, 2008 Decl. Ex. 1 at 29.) A plaintiff cannot obtain a preliminary injunction by speculating about hypothetical future injuries. *E. St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 705-06 (7th Cir. 2005). In addition, even if the realignment occurs, Manitou Council has not demonstrated that it would lose any assets, employees, or the ability to provide Girl Scouting. (Wright March 21, 2008 Decl. ¶ 73.) And if the realignment takes place, then Manitou Council can seek to have its jurisdiction restored through the ordinary course of litigation. "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (1958).

In sum, Manitou Council has not demonstrated that, in the absence of a preliminary injunction, it would become insolvent, lose its business, be unable to

finance the lawsuit, or incur damages that are very difficult to calculate. *See Builder's World*, 482 F. Supp. 2d at 1075-76. To the contrary, GSUSA has demonstrated that adequate corrective relief will be available at a later date. Because Manitou Council has not demonstrated that it will suffer irreparable harm in the absence of the extraordinary and drastic remedy of a preliminary injunction, the court need not examine the remaining three elements and is obliged to deny Manitou Council's motion for a preliminary injunction. *See Abbott Laboratories*, 971 F.2d at 11.

Also before the court, Manitou Council filed a motion to strike portions of the March 21, 2008 declaration of Vicki Wright filed by GSUSA in opposition to Manitou Council's motion for a preliminary injunction. The only paragraph of this affidavit that Manitou Council objects to and the court relied upon to rule on Manitou Council's motion for a preliminary injunction is paragraph number 73. Therefore, this is the only relevant paragraph for the purposes of the preliminary injunction motion. Paragraph 73 provides as follows:

> 73. The alleged harm to Manitou's council that it claims in this dispute is not irreparable. Even if the National Board eventually decides to change jurisdiction, contrary to Plaintiff's claims, Manitou's: (a) corporate structure would not be affected; (b) assets would not be transferred; (c) employees would not be fired; and (d) ability to provide Girl Scouting will not be affected. Even Manitou's donors who want to give donations devoted to girls in Manitou's present jurisdiction can still do so; any council can designate funds to go wherever a donor has requested.

(Wright March 21, 2008 Decl. ¶ 73.)

-6-

Case 2:08-cv-00184-JPS   Filed 06/05/08   Page 6 of 10   Document 58

Manitou Council asserts that this paragraph is based upon information presented at meetings where Ms. Wright was not in attendance, and, therefore, the information is not based upon personal knowledge. As such, Manitou Council asserts, the paragraph contains hearsay in violation of Fed. R. Evid. 801 and 802. Manitou Council also asserts that the paragraph contains legal argument and lay opinion lacking foundation in violation of Fed. R. Evid. 701 and 702.

As a preliminary matter, it appears Ms. Wright has personal knowledge of the information represented in her declaration. Indeed, Ms. Wright states that she is "Project Director for the Realignment Strategy" for GSUSA and that she has "personal knowledge of the facts stated [in her declaration] and if sworn as a witness in this case would be competent to testify thereto . . . . " (Wright March 21, 2008 Decl. ¶¶ 1-2.) In addition, although Ms. Wright's statement that Manitou Council's claim of harm "is not irreparable" may constitute improper legal opinion, the substantive statements made by Ms. Wright in paragraph number 73 are not in the form of opinion; rather, they are statements based upon her personal knowledge acquired in the course of performing her duties as the project director for the realignment. (Wright April 30, 2008 Decl. ¶¶ 3-4.) Furthermore, even if portions of Ms. Wright's affidavit are ultimately deemed inadmissible, the Seventh Circuit has held that hearsay and inadmissible evidence may be considered by the court at the preliminary injunction stage. *S.E.C. v. Cherif*, 933 F.2d 403, 412 n.8 (7th Cir. 1991) ("hearsay can be considered in entering a preliminary injunction"); *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997) (hearsay affidavits admissible

at preliminary injunction stage). As such, the court is unable to conclude that portions of the March 21, 2008 Wright Declaration should be stricken at this early stage in the litigation.

Finally, GSUSA has filed a motion for a protective order. GSUSA moves pursuant to Fed. R. Civ. P. 26(c) for a protective order requiring that Ms. Wright's deposition take place on a mutually convenient date at her principal place of business in New York, New York, rather than in Chicago, Illinois, as requested by Manitou Council in a notice of deposition dated April 29, 2008. Ms. Wright maintains a residence in New York City, near her place of work at GSUSA, and a residence in Elgin, Illinois. Manitou Council contends that Ms. Wright has not demonstrated that she is entitled to the protective order and that her deposition should be permitted to take place in Chicago because she maintains a residence in Elgin, a suburb of Chicago.

Federal Rule of Civil Procedure 26(c)(1) provides that a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . . specifying terms, including time and place, for the disclosure or discovery . . . ." Fed. R. Civ. P. 26(c)(1)(B). An examining party may set the place for the deposition of another party wherever he or she wishes, subject to the power of the court to grant a protective order under Rule 26(c) designating a different place. Wright and Miller, *Federal Practice and Procedure:* Civil 2d § 2112. While a court may order a defendant to appear at any convenient place, case law indicates that, in the absence

of special circumstances, a party seeking discovery generally must go where the desired witnesses are normally located. *See, e.g., Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) ("the deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business, especially when, as in this case, the corporation is the defendant.") (internal quotation omitted); *see also Farquhar v. Shelden*, 116 F.R.D. 70, 72 (E.D. Mich. 1987); *General Leasing Co. v. Lawrence Photo-Graphic Supply*, 84 F.R.D. 130, 131 (W.D. Mo. 1979). The underlying reason for this general rule is that it is the plaintiff who brings the lawsuit. The defendant, on the other hand, is not before the court by choice. *See Farquhar*, 116 F.R.D. at 72. It is within the discretion of the court to designate the location for a taking of depositions, and each request must be considered on its own facts and equities. *See id.*

Here, the fact that Ms. Wright maintains a residence in Elgin, Illinois, does not outweigh the facts that Ms. Wright's office, staff, counsel, and apartment, in addition to the documents relevant to this case and defendant GSUSA's principal place of business, are all located in New York City. In addition, Ms. Wright is not being deposed on personal matters but on her duties as the project director for the realignment for defendant GSUSA. In light of the foregoing, the court concludes that GSUSA has presented good cause for a protective order. *See also Chris-Craft Indus. Prods. v. Kuraray Co.*, 184 F.R.D. 605, 607 (N.D. Ill. 1999) ("[T]he purposes underlying the general rule that the depositions should proceed at the corporation's principal place of business create a presumption that the corporation has good

cause for a protective order."). Furthermore, Manitou Council has not demonstrated any special circumstances that would compel the court to stray from the general rule that the person seeking discovery must go where the desired witnesses are normally located. In balancing the equities, the court will grant GSUSA's motion for a protective order requiring that Ms. Wright's deposition take place on a mutually convenient date in New York City.

Accordingly,

**IT IS ORDERED** that the plaintiff's motion for a preliminary injunction (Docket #3) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the plaintiff's motion to strike portions of the Wright Declaration (Docket #24) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the defendants' motion for a protective order (Docket #35) be and the same is hereby **GRANTED**.

Dated at Milwaukee, Wisconsin, this 5th day of June, 2008.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

-10-
Case 2:08-cv-00184-JPS   Filed 06/05/08   Page 10 of 10   Document 58